[Civ. No. 17589.   Second Dist., Div. Three.   Sept. 11, 1950.]

PETER J. MURPHY et al., Respondents, v. SAN GABRIEL MANUFACTURING COMPANY (a Corporation), Appellant.

A. J. O'Connor for Appellant.

Jacob Chaitkin for Respondents.

SHINN, P. J.—In November of 1947 plaintiffs Murphy agreed to purchase two lots in a real estate subdivision from San Gabriel Manufacturing Company. They made a down payment and certain progress payments in the total amount of $2,078. Thereafter they gave notice of rescission, offered to surrender their agreement and demanded the return of their money upon the ground that certain agents of San Gabriel had induced them to enter into the agreement by false and fraudulent representations. Return of the money having been denied they instituted this action in which judgment was given in their favor for $2,078. San Gabriel appeals.

There was evidence that a broker, John M. Pon, was San Gabriel's agent for sale of the property and that George C. Petersen, who was unlicensed as a broker or salesman, assisted Pon in making the sale to plaintiffs and was paid by Pon one half of a commission of $600. Pon accepted the services of Petersen in negotiating the sale. It was Petersen who was charged with false representations which were unknown to Pon and San Gabriel. On the appeal the sufficiency of the evidence to prove that false representations were made by Petersen and that plaintiffs' purchase was induced thereby is not questioned. It is contended, however, that San Gabriel was not responsible for the actions of Petersen and it is also claimed that plaintiffs were guilty of delay in attempting a rescission which, as a matter of law, bars their right to equitable relief. These contentions need not be discussed further for the reason that there is an independent ground upon which the judgment must be affirmed.

The real property which was subdivided was owned by John M. Pon and his wife. They complied with the provisions of Business and Professions Code, sections 11000 to 11020, which require that the plan of subdivision shall be submitted to the Real Estate Commissioner. The purpose of the scheme of state regulation is to protect the buying public and the commissioner may forbid sales or leases under the offering to prevent fraud. (§ 11019.) It is a valid law. (*In re Sidebotham*, 12 Cal.2d 434 [85 P.2d 453, 122 A.L.R. 496].) Section 11010 provides that the subdivider shall notify the commissioner in writing of his intention to sell such offering which notice shall contain among other things: "(e) A true statement of the terms and conditions on which it is intended to dispose of the land, together with copies of any contracts intended to be used." A copy of the proposed contract was filed with the commissioner in compliance with this requirement. Thereafter Pon and wife conveyed the property to San Gabriel Manufacturing Company but Pon remained as selling agent of the property and made numerous sales of lots. Section 11012 of the code reads: "It is unlawful for the owner, his agent, or subdivider, of the project after it is submitted to the Real Estate Division, to materially change the setup of such offering without first notifying the Real Estate Division in writing of such intended change." Section 11020 provides that one who wilfully violates or fails to comply with any of the provisions of the chapter (§§ 11000-11020) is guilty of a public offense and punishable by fine or imprisonment.

The agreement between plaintiffs and San Gabriel was not in the form of the contract previously filed with the Real Estate Commissioner. No information was given to the Real Estate Division of a proposed change from the contract form submitted to the one that was used. Therefore, if the effect of the change was "to materially change the setup of such offering" the use of the substituted contract was a violation of the act. There can be no doubt that the contract that was used varied in material respects from the one filed with the commissioner. The contract which plaintiffs signed reserved rights-of-way over the lots for poles with crossarms for the transmission of electrical energy, for telephone lines and for water, gas, sewage, electrical and telephone conduits, the sole right being reserved in the seller to convey such rights-of-way. The proposed contract did not contain these reservations. It did, however, contain the provision "that no store,

launderette, restaurant, saloon, cigar, fruit or candy stand or any blacksmith or manufacturing, dairying or livery business nor any unlawful business shall at any time be maintained or carried on upon said premises or any part thereof.'' It was thus represented to the commissioner to be offered as a strictly residential subdivision. The contract that was used contained no such restrictions. It did, however, reserve to the seller all mineral, oil and gas rights and the right to natural underground storage space without a reservation of the right of entry upon the surface for drilling purposes. The submitted contract contained no such reservation. The contract with plaintiffs provided that it should become wholly void and terminated if either party caused the same to be recorded in the office of any county recorder. The submitted form contained no such provision. There were other variances which we deem to be of less importance. If the form of contract to be used in the marketing of a subdivision had not been deemed by the Legislature to be an important feature of the offering it would not have been specified as an item of information to be furnished by the seller. It is sufficient to say with reference to the change of plan, that one who had contracted to buy a lot in this subdivision under the form of agreement that was submitted to the commissioner would not have been required to accept a deed which followed the form of the agreement which these plaintiffs signed. Such a deed would have failed in material respects to fulfill the seller's obligations with respect to the title agreed to be conveyed.

The requirements of section 11012 are mandatory. They are for the protection of the buying public and a violation of them is a criminal offense. Therefore the wilful use by San Gabriel of the form of contract which plaintiffs signed was unlawful. It is argued that there was no evidence that San Gabriel had knowledge of the representations made to the commissioner. But San Gabriel could not plead ignorance of the illegality of the contract under which they were marketing the lots. Moreover, Pon had actual knowledge; he was San Gabriel's selling agent, and the only one through whom sales were made. If his sales were made unlawfully, his principal cannot escape responsibility.

The rule of law which governs in such a case was stated in *Smith* v. *Bach,* 183 Cal. 259, 263 [191 P. 14], as follows: ''By the weight of authority where money has been paid in consideration of an executory contract which is illegal, the party who has paid it may repudiate the agreement at any

time before it is executed and reclaim the money. In such a case it is the duty of the court in furtherance of justice to aid one not in *pari delicto*, though to some extent involved in the illegality, but who, as here, is comparatively the more innocent, and to permit him to recover back money paid on a contract as the circumstances of the case may require." (See also, *McAllister* v. *Drapeau*, 14 Cal.2d 102, 112 [92 P.2d 911, 125 A.L.R. 800] ; *Morrison* v. *Landers*, 56 Cal.App.2d 607 [133 P.2d 34], *Severance* v. *Knight-Counihan Co.*, 29 Cal.2d 561, 568 [177 P.2d 4, 172 A.L.R. 1107] ; *Carter* v. *Seaboard Finance Co.*, 33 Cal.2d 564, 573 [203 P.2d 758] ; *Orlinoff* v. *Campbell*, 91 Cal.App.2d 382, 388 [205 P.2d 67] ; *White* v. *Jacobs*, 204 Cal. 334, 336 [267 P. 1087] ; *Goodspeed* v. *Associated Almond Growers*, 208 Cal. 121, 122 [280 P. 530].)

The facts with relation to the contract forms were alleged in the complaint and a copy of the one filed with the commissioner was attached as an exhibit. The one that the parties entered into was received as an exhibit. Although the answer of San Gabriel denied that the contract form was the only one that had been filed with the commissioner they offered no evidence on the point. A deputy commissioner identified the form alleged in the complaint, and testified that no notice had been given the commission of the intended use of any other form. The court failed to make a finding upon this issue. We therefore find that the facts as to the two forms of contract are as we have stated them. (Code Civ. Proc., § 956a; *Downs* v. *Benatar's Cut Rate Drug Stores*, 75 Cal.App.2d 61, 68 [170 P.2d 88] ; *Horsman* v. *Maden*, 69 Cal. App.2d 11, 17 [157 P.2d 882] ; *Replogle* v. *Ray*, 48 Cal.App.2d 291, 311 [119 P.2d 980].)

Plaintiffs established a clear right to the return of the money they had paid on a void contract.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.