[Civ. No. 22285.   Second Dist., Div. Two.   Oct. 29, 1957.]

RICHARD M. WESTBROOK, Appellant, v. SUMMER-FIELD, ROBERTS AND McARTHUR, INC. (a Corporation) et al., Respondents.

Dryden, Harrington, Horgan & Swartz, Jacob Swartz and Vernon G. Foster for Appellant.

Littlejohn & Callister and E. Talbot Callister for Respondents.

MOORE, P. J.—Plaintiff sued for $10,000 damages on the ground that his contract for the purchase of 12 lots in tentative tract Number 19037 was void in that defendant corporation had failed to comply with section 11010 of the Business and Professions Code* prior to its sale to plaintiff of certain lots or parcels of a subdivision.

Prior to March 1953, respondent corporation owned 22 lots of unimproved land which had been previously subdivided as a portion of Tract Number 9426 in the county of Los Angeles. By reason of the nature of the terrain and of the size

---

*Business and Professions Code: [Amended by Stats. 1953, ch. 731, § 1.]

§ 11010. Prior to the time when subdivided lands are to be offered for sale or lease, the owner, his agent or subdivider shall notify the commissioner in writing of his intention to sell *or lease* such offering.

The notice of intention shall contain the following information:

(a) The name and address of the owner.

(b) The name and address of the subdivider.

(c) The legal description and area of lands.

(d) A true statement of the condition of the title to the land, particularly including all encumbrances thereon.

(e) A true statement of the terms and conditions on which it is intended to dispose of the land, together with copies of any contracts intended to be used.

(f) A true statement of the provisions, if any, that have been made for public utilities in the proposed subdivision, including water, electricity, gas and telephone facilities.

(g) Such other information as the owner, his agent, or subdivider, may desire to present.

[Italicized phrase added in 1953.]

of the lot parcels, respondent had commenced a resubdivision of the acreage. At that time it owned the following land then undergoing resubdivision, to wit:

(1) Lots 27 to 31 inclusive and Lot 39 of Tract Number 15736;

(2) Lots 1 to 4 inclusive of tentative Tract Number 18937;

(3) Lots 1 to 12 inclusive of tentative Tract Number 19037.

The resubdivision of the six lots in Tract Number 15736 had been completed in March 1953, as a consequence of which that tract had a permanent and fixed legal description. But by virtue of the fact that the resubdivision of the four lots in tentative Tract Number 18937 and the 12 lots in tentative Tract Number 19037 had not at that time been completed by respondent, they had no fixed legal description except that they were portions of original Tract Number 9426.

In March 1953 when appellant Westbrook offered to purchase the lands in Tract Number 15736 and in tentative Tract Number 18937 at $3,750 per lot, appellant stated to respondent that he planned to build homes on the 10 lots he desired to purchase and to sell them to the public and also, that he desired an option to purchase the remaining 12 lots in tentative Tract Number 19037.

Following respondent's rejection of such offer, it agreed to sell and appellant agreed to buy all 22 lots from respondent on the following basis:

(a) ten lots in Tract Number 15736 and tentative Tract Number 18937 at $3,750 each;

(b) twelve lots in tentative Tract Number 19037 at $4,250 each, payable six months later;

(c) respondent will grade the lands in accordance with the plans of appellant provided that the latter make available $10,000 in escrow for the payment of the cost of such grading;

(d) it is understood that at this time the land is being resubdivided and that the resubdivision has not been completed;

(e) respondent will complete the resubdivision of tentative Tract Number 19037 during escrow, but made no promise with respect to tentative Tract Number 18937.

In view of the fact that some confusion has resulted from the incident that two escrows were opened to complete the transaction, the history of that event will illuminate further discussion.

Pursuant to the suggestion of the escrow agent, the parties

opened two escrows "because of the different time periods" as a part of the one transaction. The first escrow, Number 7114, was used to expedite and complete the sale of Lots 27 to 31 and Lot 39 of Tract Number 15736 and Lots 1 to 4 of tentative Tract Number 18937. Such escrow instructions expressly provided that if the final map should not be recorded prior to the close of escrow then the existing legal descriptions would be used as to Lots 1 to 4 of tentative Tract Number 18937.

The second escrow, Number 7115, was opened to consummate the sale of Lots 1 to 12 of tentative Tract Number 19037. It was to continue six months. It expressly required respondent to complete the resubdivision of tentative Tract Number 19037 prior to close of escrow and to grade a portion of the property according to the agreed specifications and that $10,000 paid into escrow by appellant would be released for the payment of that sum for such grading.

Neither at the time of opening the escrows nor at any subsequent time during the term of the escrow was there a hint that there was more than one transaction for the sale of the 22 lots even though two escrows were utilized for the purpose of completing it; on the contrary, both parties were in agreement on that score.

While the second escrow was brewing, respondent completed the resubdivision of tentative Tract Number 19037. It graded the land according to appellant's specifications and it used the escrowed $10,000 to pay the grading contractor for such grading. Respondent had not promised to complete the resubdivision of tentative Tract Number 18937 and it was not completed by either party.

The first escrow, dealing with Tract Number 15736 and tentative Tract Number 18937 was completed at a later date. In view of the fact that the resubdivision of tentative Tract Number 18937 had not been completed, the deeds drawn to convey those lands to appellant used metes and bounds for descriptions instead of the numbers of the parcels. However, appellant accepted the conveyances so prepared conveying the lands of Tracts 15736 and 18937, constructed homes on the parcels and sold them to members of the public.

But appellant refused to complete the second escrow which had been mutually arranged to consummate the sale of tentative Tract Number 19037, and demanded the return to himself of the $10,000 which, with his collaboration, had been expended for grading tentative Tract Number 19037.

In March 1953 the president of respondent had explained to appellant that prior to the sale of "subdivided lands" the commissioner should be notified in writing of such intention by notice containing the information required by section 11010, Business and Professions Code, and pertinent regulations of the Real Estate Commission. The president explained that a lengthy and detailed questionnaire on a form prescribed by the commissioner must be filed and that no sales of such lands should be made until a "public report" has been issued by the commission. (Bus. & Prof. Code, § 11018.) Appellant was told that he would have to obtain the public report before he could sell homes to the public. At that very time appellant had in his possession a public report on Tract Number 15736, but no such report had been issued as to either tentative Tract Number 18937 or Number 19037. However, appellant thereafter constructed homes on tentative Tract Number 18937 without the required public report.

Respondent as owner of a block of land contracted to sell the entirety of such land to appellant. In all their references to the land, they described it as consisting of certain lots. By reason of such description, appellant now contends that the transaction was one for the sale of "subdivided lands." Now section 11000, Business and Professions Code, defines subdivided land as lands divided or proposed to be divided for the purpose of sale. But the testimony is uncontradicted that this was one transaction for the sale and purchase of 22 lots in a package deal, six of them located in a completed resubdivision, and the others in two proposed resubdivisions. Respondent made no division for the purpose of such sale. It sold all to appellant and it was the intention of appellant to buy and thereafter to divide the land (except the completed resubdivision Number 15736), build homes upon it and then to sell them.

The reference to the land as consisting of certain lots was merely the use of convenient verbiage. It was not intended thereby to make a sale such as is made of lands that have been subdivided pursuant to section 11010, *supra*. This is rendered indisputably clear by the fact that thereafter when tentative tract Number 18937 was not completed, it was conveyed to appellant by metes and bounds.

In *Hagge* v. *Drew*, 27 Cal.2d 368 [165 P.2d 461], it was contended that the seller Drew had not complied with sections 11000 and 11010. Hagge's trust deed recited that it was contemplated that the property will be subdivided and

trustor Hagge agrees to subdivide a designated parcel thereof. In August 1942 one parcel was released to Hagge from the trust deed and he subdivided it, erected homes on it and sold them. The court found that Drew had performed all his obligations; that Hagge paid Drew $46,350 on the purchase note, failed to pay the remainder, defaulted, and his rights were terminated by Drew. ■ "It was a sale of land which lent itself to subdivision but the subdividing was to be done by the plaintiffs and by them offered for sale . . . the statutory provisions quoted do not apply to a contract of sale by the owner *to a subdivider who is to subdivide the property and sell it to the public."* (Emphasis added.)

■ The provisions of sections 11000 et seq. of the Business and Professions Code and the nature of the information and notice which they require leave no doubt as to the purpose and the reason for those statutes. Their purpose is to protect individual members of the public who purchase lots or homes from subdividers and to make sure that full information will be given to all purchasers concerning public utility facilities and other essential facts with reference to the land.

The purpose of the scheme of state regulation is to protect the buying public. The commissioner may forbid sales or leases to prevent fraud. ■ The requirements of section 11012 are mandatory that owner or subdivider not change the setup after it is submitted to the Real Estate Division without first notifying the division in writing. (*Murphy* v. *San Gabriel Mfg. Co.,* 99 Cal.App.2d 365, 367 [222 P.2d 85]; *In re Sidebotham,* 12 Cal.2d 434, 436 [85 P.2d 453, 122 A.L.R. 496].)

■ Appellant was not among the groups of persons who were to be protected by these statutes. He was not a member of the public to be protected by full information concerning the public utility facilities and other essential factors. He was the man who planned to divide the land, to build homes and to sell to individual members of the public. He was the very person who would arrange with respect to public utility facilities, drainage, sewers, fire protection, types of streets to be installed. It is inconceivable that the Legislature could have intended to protect a subdivider. Their sole thought was the protection of the individual members of the buying public. Appellant was not a member of the public within the contemplation of these statutes.

That the foregoing conclusions are correct is attested by the fact that during the two decades since their enactment the cited statutes have been applied only where there have been

sales or leases to members of the general public and never where land was conveyed to a subdivider so that he might subdivide, build on and sell the land.

Affirmed.

Fox, J., and Ashburn, J., concurred.

A petition for a rehearing was denied November 21, 1957, and appellant's petition for a hearing by the Supreme Court was denied December 23, 1957.