Filed 12/19/14  North Beach Partners v. Sollner CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| NORTH BEACH PARTNERS, LLC,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>JOHN SOLLNER,<br><br>        Defendant and Respondent. | A136514<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-11-509179) |

In this action for rescission, North Beach Partners, LLC (NBP) appeals from a judgment in favor of respondent John Sollner.  NBP contends that the sale of unit 4 of 3300 Clay Street violated the Subdivided Lands Act (Bus. and Prof. Code,[1] § 11000 et seq.) because Sollner failed to obtain a public report approved by the Department of Real Estate.  NBP also argues that the trial court erred in denying its motion to reopen the evidence at trial.  We affirm.

## I.  FACTS

In 2004, NBP, together with an investment group which included Sollner, purchased the six-unit building located at 3300 Clay Street (the property).[2]  The property was comprised of six units.  At the time of the purchase, the buyers entered into a tenancy in common agreement.  Pursuant to the agreement, the buyers were assigned exclusive

---

[1] Unless otherwise indicated, all further statutory references are to the Business and Professions Code.

[2] WB Coyle is the managing member of NBP.

occupancy rights to particular units. Sollner had the exclusive rights to units 1 and 4. NBP, however, also retained an interest in unit 4, in addition to management rights, under a profit-sharing agreement with Sollner. They intended to renovate the unit and resell it. NBP planned to obtain a public report for the property.[3]

In February 2008, Sollner sought to obtain confirmation that a public report was not necessary to sell unit 4 of the property. The Assistant Commissioner of the Department of Real Estate confirmed that a public report was not required assuming, among other factors, that Sollner owned the undivided interest for at least six months and did not purchase it with the purpose of reselling it.[4]

Sollner also invested in another tenancy in common property with NBP at 744 Union Street in San Francisco.

By 2008, NBP and Sollner were engaged in a series of legal disputes concerning both unit 4 of 3300 Clay Street and the property at 744 Union Street. On June 17, 2008, they entered into a settlement agreement under which Sollner relinquished his ownership interests in both unit 4 of 3330 Clay Street and in 744 Union Street and the parties mutually released each other from any claims they may have had against each other. NBP agreed to purchase Sollner's interest in the properties under the agreement. NBP subsequently sold the Union Street unit previously owned by Sollner. There was no public report provided for the Clay Street property. NBP had begun the application process, but there was an encroachment on the property adjacent to 3330 Clay Street which required it to obtain a lot line adjustment prior to the issuance of the public report.

On March 14, 2011, NBP sued to rescind that part of the settlement agreement under which it purchased unit 4 of the 3300 Clay Street property, alleging that Sollner failed to comply with the Subdivided Lands Act. The case proceeded to a trial on May 21, 2012. The court found in favor of Sollner, finding that (1) section 11000 did not

---

[3] The Department of Real Estate's tenancy in common guidelines require that a public report be obtained for property containing five or more residential units prior to the initial sale of one or more of the units. (See §§ 11010; 11018.)

[4] Sollner had never lived in unit 4, but rented the unit to a third party for about two years.

apply because the property was transferred in the context of a settlement agreement; (2) NBP, a subdivider, could not invoke rescission to avoid the sale of a subdivided lot; (3) a public report was not required because Sollner held the property for over 18 months; (4) rescission was not available as a remedy because there was no fraud, duress, mistake, or undue influence; and (5) it was impossible to unwind the transaction because NBP has since sold the interest in 744 Union Street to a third party, and the agreement included Sollner's release of claims against NBP for which the statute of limitations had expired.

## II. DISCUSSION

NBP contends that the sale of the property violated the Subdivided Lands Act because Sollner did not obtain a public report. The record refutes this contention. In fact, NBP was responsible for obtaining the public report and failed to do so.

The Subdivided Lands Act regulates the sale of subdivided lands and defines a subdivision as land which is divided or proposed to be divided into five or more parcels for the purpose of sale or lease. (§ 11000.) The purpose of the Act is to protect individual members of the public who purchase lots or homes from subdivision developers. (*Drake v. Martin* (1994) 30 Cal.App.4th 984, 995.) A subdivider who intends to offer subdivided property for sale or lease is required to file an application for a public report. (§ 11010.) The Real Estate Commissioner is responsible for examining the property and issuing the public report authorizing the sale or lease of the lots or parcels within the subdivision if it determines that it complies with the provisions of the Act. (§ 11018.) The Subdivided Lands Act also requires that any blanket lien on a subdivision include a release clause so that purchasers of subdivided parcels can obtain title free of the lien upon compliance with the terms and conditions of the purchase agreement. (§ 11013.1; *Drake v. Martin*, *supra*, 30 Cal.App.4th at p. 992.) A contract to purchase a subdivided parcel is voidable if it does not comply with the Subdivided Lands Act. (*Ibid.*, *Yuba Cypress Housing Partners, Ltd. v. Area Developers* (2002) 98 Cal.App.4th 1077, 1083.)

Here, NBP's complaint sought to rescind the settlement agreement on the ground that the subdivision at 3300 Clay Street violates the Subdivided Lands Act because a public report was never obtained. As the trial court found, the Act does not apply to NBP

3

because it was the subdivider of the property.   The record makes clear that NBP initially entered the contract to purchase the property and then sought investors, including Sollner, to acquire undivided interests in the property.  These investors included Terrapin Ventures LLC and Astabella, LLC, in which NBP maintained a 50 percent interest.  And, NBP also had a profit sharing agreement with Sollner for unit 4 of the property.  NBP was thus not within the members of the public the Legislature sought to protect by enacting the Subdivided Lands Act.  (*Westbrook v. Summerfield, Roberts Etc., Inc.* (1957) 154 Cal.App.2d 761, 766.)  The Act does " 'not apply to a contract of sale by the owner *to a subdivider who is to subdivide the property and sell it to the public.*' "  (*Ibid.,* italics added, quoting *Hagge v. Drew* (1945) 27 Cal.2d 368, 373.)

Here, not only was NBP the subdivider, it, through Coyle, was responsible for procuring the public report.  The investors in 3300 Clay Street wanted the public report because it would enable them to sell their units, and they were losing money due to NBP's failure to pay homeowners association dues, property taxes, and mortgage payments.  In addition, the record shows that it was within NBP's power to resolve a lot line adjustment issue that was delaying the completion of the public report, because it was the owner of the adjacent property on which the 3300 Clay Street property encroached.  NBP, however, failed to complete the process for obtaining a public report. It cannot now claim that it was Sollner's responsibility.  In any event, the record shows that Sollner obtained an exemption from the Department of Real Estate to sell his unit without a public report.  Thus, even if the Subdivided Lands Act applied to the transaction, Sollner's transfer of his interest in unit 4 of 3300 Clay Street to NBP pursuant to the settlement agreement did not violate the Act and is not voidable.  (Cf. *Drake v. Martin*, *supra*, 30 Cal.App.4th at p. 992 [noncompliance with the Act renders a purchase agreement voidable].)

4

NBP also asserts that the sale of unit 4 violated section 11013.1[5] because there was a blanket mortgage on 3300 Clay Street that did not contain a release clause. This claim also fails because NBP is not within that group of people sought to be protected by the Subdivided Lands Act. Moreover, the agreement between the parties specifically provides that NBP "is taking title to the property 'subject to' the existing financing of approximately $388,240." Thus, by the terms of the agreement, NBP accepted the obligations under the existing encumbrance on the property.

NBP further argues that the trial court erred in denying its two motions to reopen the evidence. Its first motion sought to introduce evidence from a subsequent arbitration hearing between the parties in which Sollner allegedly admitted that he intended to invoke the Ellis Act (Gov. Code, § 7060 et seq.) to remove the tenant from unit 4. NBP contends this evidence was contrary to Sollner's trial testimony that he intended to rent the unit. Its second motion sought to introduce evidence that the Department of Real Estate approved the preliminary public report, authorizing Sollner to market the unit for sale, though not to sell it.

The court did not abuse its discretion in denying NBP's motions to reopen the evidence. As the trial court found, the additional evidence was not material to a resolution of the issues and would not change the underlying determination. The evidence showed that Sollner intended either to rent the unit or to resell it; he had in fact rented the unit for two years. The fact that a preliminary public report was approved in May 2006 was irrelevant inasmuch as we have concluded that the Subdivided Lands Act does not apply to NBP, the subdivider in this case.

---

[5] Section 11013.1 provides "[i]t shall be unlawful . . . for the owner, subdivider, or agent to sell or lease lots or parcels within a subdivision that is subject to a blanket encumbrance unless there exists in such blanket encumbrance or other supplementary agreement a provision, hereinafter referred to as a release clause, which by its terms shall unconditionally provide that the purchaser or lessee of a lot or parcel can obtain legal title or other interest contracted for, free and clear of such blanket encumbrance, upon compliance with the terms and conditions of the purchase or lease."

Even if the sale of the property was a technical violation of the Subdivided Lands Act, NBP cannot rescind the transaction. The sale was part of a global settlement agreement that was at least partially executed and cannot now be unwound. (See, e.g., *Persson v. Smart Inventions, Inc*. (2005) 125 Cal.App.4th 1141, 1153–1154; *IMO Development Corp. v. Dow Corning Corp*. (1982) 135 Cal.App.3d 451, 458 [partial rescission of a contract not allowed because it would have bound the parties to a contract which they did not contemplate].) First, Sollner's interest in the Union Street property, which was part of the consideration for the agreement, has since been sold to a third party. Second, Sollner released claims he had against NBP which are now stale, and on which the statute of limitations has expired. Finally, NBP has not alleged or shown that it was actually harmed in any way by the absence of a public report on the Clay Street property. In sum, NBP has not shown that it is entitled to any relief.

### III. DISPOSITION

The judgment is affirmed.

_____
Rivera, J.

We concur:

_____
Ruvolo, P.J.

_____
Reardon, J.

6