# Richmond

## H. B. WHITT v. JOHN R. GODWIN.

January 18, 1965.

Record No. 5823.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

*Willard I. Walker* (*Alexander W. Neal, Jr.; Battle, Neal, Harris, Minor & Williams,* on brief), for the plaintiff in error.

*George E. Allen* and *Granville R. Patrick* (*Allen, Allen, Allen & Allen,* on brief), for the defendant in error.

I'Anson, J., delivered the opinion of the court.

John R. Godwin, plaintiff, filed a motion for judgment against the defendant, H. B. Whitt, to recover for an alleged breach of contract, whereby defendant agreed to return to him $12,000 which he paid on account of the purchase price of shares of stock in Associated Motels, Inc. In his grounds of defense Whitt admitted the execution of the contract, but asserted that Godwin wrongfully prevented him from collecting $6,000 of the $12,000 which he sought from Federated Mortgagee Corp.; that he was thus excused from performance of a portion of the contract, and that his liability to Godwin was limited to $6,000.

There was a jury trial, and at the conclusion of all the evidence the trial court sustained plaintiff's motion to strike defendant's evidence and entered summary judgment for the plaintiff in the amount of $12,000. To review that judgment, a writ of error was awarded defendant.

Defendant contends that the trial court erred (1) in ruling as a matter of law that there was no evidence from which the jury could reasonably infer that the plaintiff, by refusing to sign a release required by Federated Mortgagee, had wrongfully prevented him from fulfilling a portion of his contract; and (2) in entering summary judgment for the plaintiff.

Under familiar principles, the evidence must be reviewed in the light most favorable to the defendant, and he is entitled to all just and fair inferences therefrom.

Whitt was the principle stockholder in Associated Motels, Inc., which owned a tract of land located near interchange 35 on Interstate 95, between Richmond and Petersburg, in Prince George County, Virginia, upon which the corporation planned to construct a motel, to be known as Congress Inn.

On August 17, 1961, Whitt entered into a contract with Godwin whereby he agreed to sell him 248 shares of the corporation's stock

for $30,000, of which $12,000 was paid by Godwin on the above date. Whitt immediately turned the $12,000 over to Federated Mortgagee Corp., with which he had been negotiating to obtain a $630,000 construction loan from the Teamsters' Union, as a standby commitment fee.

Subsequently, Whitt learned that Federated Mortgagee's business practices were under investigation for possible violations of the law, and when it became apparent to him that Federated Mortgagee could not obtain the loan, he sought, without success, a refund of a portion of his money. Federated Mortgagee had agreed that if it was unable to obtain the loan, $6,000 of the $12,000 would be returned to Whitt and so much as remained of the additional $6,000 after deducting expenses.

On March 6, 1962, Godwin and Whitt met in the office of Roland Wells, Whitt's accountant, and discussed for some time their further relationship in the motel project. As a result of this conference, Wells, at Whitt's direction, after they had conferred with Whitt's attorney over the telephone, prepared a letter agreement which was signed by Whitt and accepted by Godwin.

The letter contract, dated March 6, 1962, referred to the agreement of August 17, 1961, and the payment of $12,000 made by Godwin on account of the purchase price of the stock in Associated Motels, Inc., which he (Whitt) used as a commitment fee for the loan to be obtained through Federated Mortgagee. It then stated that no commitment had been obtained, and that:

"* * * I [Whitt] am experiencing difficulty in obtaining a refund of the commitment fee. It may be that I will have to accept less than the Twelve Thousand dollars ($12,000), but in consideration of you [Godwin] giving up any right to the two hundred and forty eight shares of Associated Motels, Inc., which you acquired under paragraph 5 of my letter of August 17, 1961, I agree to pay to you, upon receipt, all the money which I can recover from Federated Mortgagee, Inc., which I paid the Twelve Thousand dollars to and I will further agree to pay you any difference between the amount which I am able to recover and the Twelve Thousand dollars, on or before six months from the date of this letter."

Whitt testified, without objection, that before the contract was reduced to writing he told Godwin that Federated Mortgagee had agreed to refund $6,000 "and a part of the other $6,000"; that it was agreed that they would have to sign a release discharging Federated Mortgagee from further liability to obtain any part of the $12,000,

and that the release would be placed with Lawyers Title Insurance Corporation, to be delivered to Federated Mortgagee when it deposited the $6,000 with Lawyers Title as escrow agent. However, he further said that Godwin stated that "he was not willing to sign a release, and that they (Federated Mortgagee) were swindlers."

Whitt further testified that sometime after the agreement of March 6, 1962, was entered into, he telephoned Godwin and informed him that Federated Mortgagee had offered to return $6,000 if he (Godwin), Whitt, and Whitt's attorney would sign a release relieving it from the payment of the balance of the $12,000, and Godwin stated that he would not sign the release. He then wrote Godwin a letter requesting him to sign a release, to which he received no reply.

Wells testified that some mention was made at the conference of a release to be signed and left with Lawyers Title, but his evidence does not show that Godwin agreed to sign the release.

Godwin denied that he had ever agreed to sign a release, that Whitt had requested him to sign one, or that he had received Whitt's letter.

Whitt argues that under the terms of the written contract, and his evidence explanatory thereof, there was an implied and expressed promise that Godwin would sign the release required by Federated Mortgagee.

There is an implied condition of every contract that one party will not prevent performance by the other party. Hence if one of the contracting parties prevents the other party from performing under a contract, he cannot prevail in an action for nonperformance of the contract which he himself has brought about. This is founded upon the principle that he who prevents a thing from being done may not avail himself of the nonperformance for which he alone is responsible. *Boggs* v. *Duncan*, 202 Va. 877, 882, 121 S. E. 2d 359, 363; *Parrish* v. *Wightman*, 184 Va. 86, 92, 93, 34 S. E. 2d 229, 232; 17 Am. Jur. 2d, Contracts, § 426, p. 881; 17A C. J. S., Contracts, § 468(a), pp. 641, 642; 5 Williston on Contracts, 3d ed., Jaeger, §§ 677, 677A, pp. 232-235.

However, it is manifest that this principle has no application when the hindrance is due to some action of the promisor which he was permitted to take under either the express or implied terms of the contract. *Godburn* v. *Meserve*, 130 Conn. 723, 37 A. 2d 235, 237; 5 Williston on Contracts, 3d ed., Jaeger, § 677A, pp. 234, 235; Restatement, Contracts, § 295(b), p. 438 (1932). Moreover, in order to excuse nonperformance of a contract, the action of the party whose

conduct is alleged to have prevented performance "must be wrongful, and, accordingly, in excess of his legal rights." 5 Page on Contracts, § 2919, p. 5145; *Goldston Brothers* v. *Newkirk*, 233 N. C. 428, 64 S. E. 2d 424, 427; *Godburn* v. *Meserve, supra;* 17A C. J. S., Contracts, § 468, p. 641.

In the present case the terms of the written contract are clear and unambiguous. Under its provisions the only promise made by Godwin was to give up his right to acquire 248 shares of stock in Associated Motels, Inc., in consideration of Whitt's promise to pay him $12,000 six months from March 6, 1962. Whitt's promise to pay was absolute. It was neither expressly nor impliedly conditioned upon Godwin's signing a release so Whitt might obtain $6,000 from Federated Mortgagee. Thus, Godwin's refusal to sign the release was not wrongful and in excess of his legal rights under the expressed or implied terms of the written contract. Whitt's failure to qualify his promise, so as to make the failure of Godwin to sign a release an available excuse for not paying $6,000 of the $12,000, rendered unavailable the alleged condition as a defense against a recovery for nonperformance.

But Whitt says that under his evidence, which was admissible to explain the entire contract between the parties, Godwin orally agreed to sign the release, and that even if his evidence was not admissible as an exception to the parol evidence rule, it was admitted without objection and the trial court erred in striking it.

In the recent cases of *Durham* v. *Pool Equipment Company*, 205 Va. 441, 446, 138 S. E. 2d 55, 59, 60, and *High Knob, Inc.* v. *Allen*, 205 Va. 503, 138 S. E. 2d 49, 52 (both decided on September 11, 1964), the parol evidence rule and the exceptions thereto were fully set out. It would be a work of supererogation to here repeat the rule and the exceptions thereto. Suffice it to say that Whitt's evidence, which was vague and contradictory, had no probative value and was not admissible to vary the terms of the complete, unambiguous and unconditional written contract.

Before the contract of August 6, 1962, was entered into, Whitt testified that he discussed at great length with Godwin that it would be necessary for them to sign a release if he (Whitt) was to get any money back from Federated Mortgagee, and it was agreed that a release would be signed. But he also said that Godwin was emphatic in telling him that he would not sign a release. Hence, in view of Godwin's expressed attitude toward signing the release and Whitt's

information that a release would be required by Federated Mortgagee, it would reasonably appear that if it was intended that Whitt's payment of the $12,000 was conditioned upon Godwin's signing a release, the contract prepared at Whitt's direction would have been expected to include the said condition as a part of the written contract. It cannot be concluded from Whitt's testimony that Godwin's oral agreement to sign a release was made the subject of an independent collateral agreement which would be inconsistent with the written contract and Godwin's expressed refusal to sign one. It is thus apparent that Whitt assumed the risk, which was known to him when the contract was entered into.

Moreover, Whitt conceded that no release had been prepared and presented to Godwin for his signature, and that he had no assurance that Federated Mortgagee would have returned to him $6,000 of the $12,000 even if Godwin had signed a release. Thus, there was no proof that Godwin wrongfully prevented Whitt from collecting $6,000 from Federated Mortgagee, which, at best, was only a mere possibility, and he was not excused from the payment of the $12,000 he promised to pay Godwin.

Even though parol evidence is admitted, without objection, to vary, contradict, alter, or add to the terms of a written instrument, a trial court is not precluded from disregarding it upon a motion to strike and enter summary judgment. The parol evidence rule is not one of evidence, as the expression might imply, but is in reality a rule of substantive law. See 20 Am. Jur., Evidence, §§ 1100, 1101, pp. 963, 964; 32A C. J. S., Evidence, § 851, p. 219, and the cases cited from numerous jurisdictions; The Law of Evidence in Virginia and West Virginia, § 244, p. 423.

For the reasons stated, we hold that there was no evidence of probative value before the jury from which it could reasonably find that Godwin wrongfully prevented Whitt from performing a part of his contract. Thus the issue presented was one of law, and the trial court did not err in entering summary judgment against Whitt for $12,000, and the judgment is

*Affirmed.*