Linda **MATNEY**, Appellant (Plaintiff),

v.

Bruce A. **WEBSTER**, Appellee (Defendant).

No. 90–202.

Supreme Court of Wyoming.

April 3, 1991.

David E. Erickson, Brown & Erickson, Rawlins, for appellant.

Cary R. Alburn III, Laramie, for appellee.

Before URBIGKIT, C.J., THOMAS, CARDINE and GOLDEN, JJ., and KALOKATHIS, District Judge.

CARDINE, Justice.

Appellant Linda Matney, seller, sought specific performance of a contract for the sale and purchase of real estate she owned in Rawlins, Wyoming. The trial court found against her because she had not allowed the buyer, appellee Bruce Webster, a reasonable time to perform a condition of the contract.

We affirm.

Matney raises these issues:

"I. May a standard purchase offer, acceptance and receipt agreement provision requiring the purchaser to pay any costs required to repair a home heating system be interpreted to allow the purchaser to replace the system, in his discretion, prior to closing?

"II. Was a sufficient time afforded to the purchaser to provide repairs under the facts and circumstances of this case?"

On July 27, 1989, Matney and Webster entered into a contract for the purchase of a house Matney owned at 109 East Buffalo in Rawlins, Wyoming for $55,000. Under the terms of the contract, the purchase was to be financed with a Wyoming Community Development Authority (WCDA) loan, and Webster was to be responsible for any repairs required as a condition for the loan.

A WCDA loan requires approval from the Federal Department of Housing and Urban Development (HUD). On September 11, 1989, HUD set the appraised value of the property at $50,100. HUD also required repairs to the heating system and improvement to the drainage around the house.

Because the HUD appraisal was less than the contract's purchase price, Webster had the option, under HUD regulations, of cancelling the contract. That contract was cancelled, and Matney and Webster entered into a new contract on September 20, 1989, for the purchase of the property at its appraised value of $50,100. As with the parties' original contract, the purchase was to be financed with a WCDA loan, and Webster was to be responsible for the cost of the required repairs.

Webster did get estimates on repairing or replacing the heating system and improving the drainage, but by late October the repairs had yet to be made. On October 27, 1989, Matney's attorney sent a letter to Webster threatening a lawsuit if the repairs were not made. Matney filed a lawsuit demanding specific performance of the contract on November 13, 1989. Matney's attorney, on November 17, 1989, sent Webster a second letter demanding performance. Webster's answer also contained counterclaims asking the contract to be terminated.

Both parties moved for summary judgment. The trial court denied both motions except to find that a contract existed between the parties. The contract provided no date for closing or for completing the repairs. Following a trial to the court on May 30, 1990, judgment was entered in favor of Webster, the court concluding that Webster was entitled to a reasonable time to complete repairs and that he had not been afforded that reasonable time.

In her first issue, Matney claims the trial court incorrectly held that Webster could have replaced as well as repaired the heating system even though the contract only provided that Webster was responsible for repairs. Repair in this context means "to restore to a sound or good state after decay, injury, dilapidation, or partial destruction." *Wyoming Coal Mining Co. v. Stanko*, 22 Wyo. 110, 128, 138 P. 182, 183

(1914) (quoting *Webster's New International Dictionary*). Replacement of the heating system would have certainly restored it to "a sound or good state." We find no error in the trial court recognizing that Webster could have met the repair requirement by replacing the heating system. *See Hawkeye Casualty Co. v. Frazier*, 183 F.2d 465, 467 (10th Cir.1950).

Matney's second issue challenges the finding that Webster had not been afforded a reasonable time to perform his repair obligation.

> "Where no time for performance is specified, the law implies performance must be within a reasonable time and what is a reasonable time depends upon the circumstances of each case." *Zitterkopf v. Roussalis*, 546 P.2d 436, 439 (Wyo.1976).

What constitutes a reasonable time in any particular case is a question of fact. *Mott Equity Elevator v. Svihovec*, 236 N.W.2d 900, 907 (N.D.1975).

The contract for purchase was entered into September 20, 1989. The suit demanding specific performance was filed on November 13, 1989. The rights of the parties to an action are determined as of the time the action is commenced. 1A C.J.S. *Actions* § 234 (1985). Thus, we examine the record to determine whether the evidence is sufficient to support a finding that the 54–day period between the signing of the contract and commencement of suit did not afford Webster a reasonable time to perform. In considering the sufficiency of the evidence, this court assumes that the evidence in favor of the successful party is true, leaves out of consideration entirely the evidence presented by the unsuccessful party that conflicts with the successful party's evidence and gives the evidence of the successful party every favorable inference that may be reasonably and fairly drawn from it. *Goss v. Goss*, 780 P.2d 306, 315 (Wyo.1989).

One of Matney's witnesses was Lynda Klouda, assistant vice president of commercial and real estate loans at the Rawlins National Bank. Klouda worked with Webster in his effort to finance the purchase of the property. Klouda's testimony demonstrated a familiarity with these types of real estate transactions. She testified that Webster met with her four or five times during September and October; that he obtained estimates from a number of contractors for replacing or repairing the heating system and correcting the drainage problem, and discussed the alternatives and cost with her. She stated Webster never indicated a desire to not complete the purchase but always acknowledged his obligation and desire to proceed. In October, Webster advised Klouda that Matney was pressuring him to close because she had signed a contract to purchase another property and needed the money. He asked if they could close before repairs were complete, and Klouda started to work on getting permission from HUD to allow Webster and Matney to close completing firm commitments for the repairs. Before that process could be completed, Matney brought her suit.

Another of Matney's witnesses was the real estate salesman who was handling the purchase of the other property Matney contracted to purchase. He testified that some closings take longer than others and when that happens closing dates are changed. He testified that the closing date on the new property was changed to accommodate Matney.

HUD's commitment upon the loan to Webster did not expire until March 11, 1990. Webster had until that date to satisfy HUD's requirements and qualify for the loan. Matney sued Webster in November, three and one-half months before HUD's loan commitment expired. Although the record demonstrates Matney's eagerness to close, nothing suggests that a reasonable time for Webster to perform had passed. The evidence was sufficient to support the trial court's finding that a reasonable time had not been afforded Webster to perform and that he did not breach the contract.

The trial court entered judgment in favor of Webster which included judgment in his favor upon the counterclaim asking termination of the contract. As a result of the judgment, the contract is terminated and

no longer of force or effect. *See* 6A Corbin, *Corbin on Contracts* § 1318 (1962).

Affirmed.

GOLDEN, J., files an opinion concurring in part and dissenting in part, in which URBIGKIT, C.J., joins.

GOLDEN, Justice, concurring in part and dissenting in part, in which URBIGKIT, Chief Justice, joins.

I agree with that portion of the majority opinion which holds that the buyer, appellee Bruce Webster, was entitled to a reasonable time to perform and did not breach his contract with the seller, appellant Linda Matney. However, I disagree with the result reached by the majority affirming termination of the contract based on appellee's counterclaim.

A careful reading of the trial court's judgment and decision letter reveals that it never made a specific finding as to why the contract should be terminated. Its judgment merely stated that the defendant/appellee was entitled to a reasonable time in which to perform, that reasonable time was not accorded him, and that therefore he did not breach the contract.

The trial court's judgment does state that the matter came before the court on the complaint of the plaintiff *and the counterclaim of the defendant* and that the court found *generally* in favor of the defendant. The majority adopts this finding, without analyzing it, to hold that "the contract is terminated and no longer of force or effect." In view of its prejudicial effect in this case, this implicit result of the trial court's decision deserves a more searching review than it was given by the majority.

Appellant's complaint requested specific performance of the contract, or in the alternative, damages for breach. Appellee's counterclaim requested that

> [t]he Court * * * declare the aforesaid document [the contract] to be terminated, because a material condition of the document cannot be fulfilled.

The material condition which "could not be fulfilled" was that "the property does not meet the standards required for a WCDA loan" despite appellee's having "in good faith applied for and attempted to comply with all requirements" to obtain that loan. Webster had the burden of proving any excuse for nonperformance of his contractual obligations. *See Sturgeon v. Phifer*, 390 P.2d 727, 729–30 (Wyo.1964).

Bruce Webster testified at trial that he was familiar with the heating system of the Matney property before he ever signed the contract to purchase it. He was aware, at the time he signed the agreement, that he was required to pay any repair costs required by WCDA or FHA. The plain language of the contract required him to do so. On the loan papers he signed, Webster listed an annual income of $25,000 and assets of $4,000 cash. He received various estimates for the required repairs, including one of $1,570 total cost for repairing the drainage system and heating system and bringing the house "up to code."

I see no reason why Webster could not have paid to have the work done and then closed the loan according to his agreement. Webster's testimony at trial certainly does not establish that it would be impossible for him to make the required repairs.

There was no material condition which could not be fulfilled by Webster. To allow rescission under these circumstances would be to allow him to take advantage of his own failure to perform his contractual duties to escape liability on the contract. This we should not allow. *See Reed v. Wadsworth*, 553 P.2d 1024, 1034 (Wyo. 1976).

It is also possible that the majority accepts appellee's argument that he was precluded from performing by appellant's suit for specific performance. A party to a contract may be excused from performance by unwarranted interference from the other party. *Concrete Specialties v. H.C. Smith Construction Co.*, 423 F.2d 670, 672 (10th Cir.1970). However, if the "interference" is caused by an act which is neither wrongful nor in excess of the interfering party's rights, it does not provide an excuse for nonperformance. *Whitt v. Godwin*, 205 Va. 797, 139 S.E.2d 841, 844 (1965); 17A C.J.S. *Contracts* § 468 (1963).

I would hold that Matney's suit here, while premature, was not wrongful or in excess of her rights under the contract. She was seeking to compel performance, not to interfere with it. The contract should not be terminated because of the suit's being filed.