Robert J. Pickett of Pickett and McKinney, Rock Springs, for appellant.

W.W. Reeves of Reeves, Murdock, Lewis & Gifford, Casper, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

**BURNS RATHOLE, INC.,**
**Appellant (Plaintiff),**

v.

**INTER–MOUNTAIN AGENCY, INC.,**
**Appellee (Defendant).**

**No. 91–142.**

Supreme Court of Wyoming.

April 17, 1992.

URBIGKIT, Chief Justice.

Appellant Burns Rathole, Inc., a Wyoming corporation engaged in oil field service work, sued appellee Inter–Mountain Agency, Inc., a Wyoming insurance agency, for failing to provide insurance coverage for which the drilling contractor claims it had paid. The trial court ruled for appellee with a finding that Inter–Mountain Agency had informed Burns Rathole and that Burns Rathole thus knew that it did not have physical damage insurance coverage on a piece of motorized drilling equipment subsequently destroyed by fire. This appeal, within contractual concepts, addresses the claim of an insurance agency obligation to provide multi-peril coverage.[1]

---

**1.** Burns Rathole sought the following relief: (1) property damage totalling $195,000.00; (2) loss

of business since the fire totalled $300,000.00; (3) future loss of business totalling $1,500,-

We affirm.

Burns Rathole raises the following issues for our review:

ISSUE I.

Did the Trial Court err in not recognizing the legal princip[le] that Appellee is liable for damages where appellee sought and received compensation for services but failed to perform the services compensated for.

ISSUE II.

Did the Trial Court err in not recognizing the legal princip[le] that the appellee agent had the duty to give notice to the appellant of its failure to obtain the applied for insurance coverage?

ISSUE III.

Is the Appellee estopped from denying that Appellant did not have insurance in accordance with its application?

Although Burns Rathole identifies three issues on appeal, our dispositive inquiry is sufficiency of the evidence to support the trial court's determination that Burns Rathole knew it did not have physical damage insurance coverage on its drilling rig prior to the fire.

## I. FACTS

In January 1986, Gerald Burns (Burns), owner and operator of Burns Rathole, Inc., contacted Inter–Mountain Agency (Inter–Mountain) to secure physical damage and liability insurance coverage for all Burns Rathole vehicles including the drilling rig in question. A United States Fidelity & Guaranty Company (USF & G) insurance application was completed and signed by Burns and he paid $10,000.00 for desired coverage which included physical damage for drilling vehicles and equipment. Application binder coverage was initially extended by USF & G in February, 1986, to provide both liability and physical damage insurance. Soon thereafter, however, USF & G's investigation of Burns Rathole's employee driving records revealed that several—even including Burns—were unacceptable. Consequently, USF & G notified Inter–Mountain that the Burns Rathole insurance coverage would be terminated on March 12, 1986. Inter–Mountain, in turn, notified Burns Rathole of the cancellation.

On the same day that the USF & G insurance was canceled, Burns completed a new application for "assigned risk plan" insurance through the Western Association of Automobile Insurance Plans. It appears from the record that "assigned risk" insurance was the only type of commercial insurance available due to the high risks of insuring drivers with multiple violations for speeding and driving while under the influence. Although the "assigned risk plan" application form included a statement that physical damage coverage was only available for "private passenger, motorcycles and light commercial vehicles" and despite an Inter–Mountain employee's prediction that physical damage coverage was not available under the plan, Burns' application nonetheless requested such coverage for two drilling rigs and other heavy-duty equipment. Burns Rathole also sought higher liability limits than those set forth on the application form. Burns Rathole made a $4,000.00 payment to Inter–Mountain to accompany the "assigned risk" insurance application and coverage was eventually secured from National Surety Corporation.[2] However, Burns Rathole's actual coverage under National Surety's "assigned risk plan" reflected a different deductible and lower liability protection than that applied for and did not provide for physical damage to commercial vehicles. National Surety mailed a copy of the policy to Inter–Mountain in June, 1986. An In-

000.00; and (4) exemplary and punitive damages in the amount of $4,000,000.00. The prospective carriers, National Surety Corporation and Fireman's Fund Insurance Company, although originally sued, were removed from the litigation by stipulation and the case proceeded as a contractual action based on the failure of the general agency to provide insurance cover-

age. Appellee had previously written business for appellant.

**2.** The Western Association of Automobile Insurance Plans assigned the Burns Rathole application to the National Surety Corporation, a subsidiary of Fireman's Fund Insurance Company.

ter–Mountain employee then hand-delivered the policy to Burns who was also reminded orally that there was no physical damage coverage on the two drilling rigs owned and operated by Burns Rathole. Inter–Mountain was unsuccessful in its continued efforts to secure supplemental physical damage coverage for the drilling rigs from other insurance sources.

On July 13, 1987 a fire destroyed one of Burns Rathole's two drilling units. Upon notification of the fire, Inter–Mountain advised Burns Rathole that the drilling rig was not insured for physical damage under the National Surety policy. Inter–Mountain did, however, file an unsuccessful claim of loss with National Surety on behalf of Burns Rathole. Following claim denial, Burns Rathole filed suit against Inter–Mountain, National Surety, and Fireman's Fund for damages resulting from physical damage to the drilling rig.

Following a court trial in March 1991, against the remaining defendant/appellee Inter–Mountain, the trial court requested written final arguments. The trial court then in decision ruled that prior to the fire, Inter–Mountain had informed and Burns Rathole knew that it did not have physical damage coverage on its drilling rigs. The trial court issued two separate opinion letters which summarized in narrative fashion the trial court's findings and conclusions. Judgment was entered in favor of Inter–Mountain on May 14, 1991 and this timely appeal followed.

## II. STANDARD OF REVIEW

Though Burns Rathole phrases the issues on appeal primarily in terms of trial court error, the dispositive question is whether sufficient evidence exists to support the trial court's ruling in favor of Inter–Mountain. Consequently, we examine the record using our standard of review for sufficiency of the evidence:

In considering the sufficiency of the evidence, this court assumes that the evidence in favor of the successful party is true, leaves out of consideration entirely the evidence presented by the unsuccessful party that conflicts with the successful party's evidence and gives the evidence of the successful party every favorable inference that may be reasonably and fairly drawn from it.

*Matney v. Webster*, 808 P.2d 212, 214 (Wyo.1991) (citing *Goss v. Goss*, 780 P.2d 306, 315 (Wyo.1989)). *See also Barnhart Drilling Co., Inc. v. Petroleum Financing, Inc.*, 807 P.2d 411 (Wyo.1991); *Stanbury v. Larsen*, 803 P.2d 349 (Wyo.1990); and *ANR Production Co. v. Wyoming Oil and Gas Conservation Com'n*, 800 P.2d 492 (Wyo.1990).

## III. DISCUSSION

In his decision letter of April 23, 1991, the trial judge summarized his impressions of the evidence and his evaluation of the witnesses' credibility:

I am of the opinion that * * * [Burns Rathole] not only knew it was not covered but was so informed by [Inter–Mountain].

The application of 3/12/86, signed by G.A. Burns, shows on its face that physical damage for commercial trucks was not available. Mr. Burns knew from past experience that Burns Rathole had no coverage for physical damage. It had none through [a previous insurer]. It apparently had such coverage with USF & G from February 1, 1986 to March 12, 1986 when that coverage was terminated by USF & G because the facts concerning its prior insurance history were not as represented on its application for coverage with USF & G. Mr. Burns admitted he supplied USF & G with false information to obtain the desired coverage.[3]

3. This sentence may be somewhat harsh in consideration of the entire record. The subject was addressed in briefing for this court and it is possible to reach the subject adequately by a characterization of either "failure to disclose insurance application facts" or perhaps "intentional concealment" of the unfavorable insur-

ance claim history of the business. In the context of the events, non-statement, understatement or misstatement equally reach the clearly expectable result that when the facts were developed, the prospective insurance carrier denied the application and canceled the preliminarily

Mr. Burns stated he was not aware that the policy was cancel[ ]ed. However, the fact remains that the coverage was terminated on March 12, 1986 and Mr. Burns promptly signed the application to National Surety on that date, and the only reasonable conclusion to be drawn from the fact that he did sign the application on the same date as the effective date of the cancellation was that he knew of that cancellation.

Mr. Burns denies that he was informed by Inter–Mountain that [Burns Rathole] had no coverage, his denial supported by the testimony of [a former Inter–Mountain employee discharged for signing the name of the wife of one of Inter–Mountain's owners without authorization and for personal benefit]. Testifying to the contrary [were two Inter–Mountain employees, one of whom is a part-owner of Inter–Mountain], who also testified that Inter–Mountain had tried to obtain physical damage coverage without success.

How the issue is to be determined depends largely on who is to be believed—a man sorely in need of money who has provided false information to get coverage for his company it never had but for a short period of time, which coverage was terminated as soon as the falsity of the information was determined, and a disgruntled former employee or two people who testified either as part owners or as employees of Inter–Mountain neither of whom had anything to gain or lose whether [Burns Rathole] was covered or not. In addition, there is the fact most consiste[nt] throughout all of the evidence that [Burns Rathole] did not ever have physical damage coverage except for the short time with USF & G and that Mr. Burns was aware of it at all times in question.

In a second decision letter dated April 30, 1991 and written after submission of the trial transcript and consideration of Burns Rathole's rebuttal argument, the trial judge reiterated his prior conclusions. Further, he critiqued Burns Rathole's "piecemealing" of exhibits and emphasized

extended coverage derived from the initial bind-

Burns' testimony that he had simply "taken it for granted" that the drilling rigs were covered for physical damage.

The evidence in this case clearly demonstrates that Burns, as owner and operator of Burns Rathole, knew his insurance with USF & G was canceled effective March 12, 1986. From a cursory reading of the National Surety insurance application, policy and other related correspondence, Burns knew or reasonably should have known that his company's heavy equipment was not covered with physical damage protection after March 12, 1986. Though Inter–Mountain continued to look for the sought-after coverage, Burns was never told—nor did he claim to have been told—that such coverage had, in fact, been secured elsewhere. Inter–Mountain representatives satisfactorily accounted for all amounts paid by Burns for insurance protection.

In *Moore v. Moore*, 809 P.2d 255, 259 (Wyo.1991), this court stated that "[w]e do not retreat from our standard that the district court is the arbiter of the credibility of witnesses when it is the fact finder * * *." We have also said "it is well settled that the credibility of witnesses and the weight of their testimony are for the trier of fact to determine." *Caterpillar Tractor Co. v. Donahue*, 674 P.2d 1276, 1286 (Wyo.1983).

We agree with the trial court that this case essentially boils down to the credibility of the witnesses when viewed in the light of documentary evidence submitted at trial. In his second decision letter, the trial judge stated:

Bluntly, considering the totality of the circumstances, I did not find Mr. Burns to be a credible witness. All too often he remembered those things which might be favorable to him and was conveniently confused about, or didn't recall, that which affected him adversely.

## IV.  CONCLUSION

After having carefully examined the record in this case, we hold that there was

er insurance.

sufficient credible evidence for the trial court to conclude Inter–Mountain had informed Burns Rathole that physical damage insurance coverage on its drilling rigs was unavailable and, further, that Burns Rathole knew it did not have such coverage in effect at the time of the drilling rig fire. Burns Rathole has failed to demonstrate any insufficiency of the evidence to justify appellate court reversal.

Affirmed.