G.C.I., INC., Appellant (Defendant),

v.

Janet HAUGHT, Appellee (Plaintiff).

No. 99–234.

Supreme Court of Wyoming.

July 17, 2000.

Representing Appellant: Bill G. Hibbler, Cheyenne, WY.

Representing Appellee: Michael R. O'Donnell of Burke, Woodard & O'Donnell, P.C., Cheyenne, WY.

Before LEHMAN, C.J., and THOMAS, MACY*, GOLDEN, and HILL, JJ.

LEHMAN, Chief Justice.

After litigation over the construction of appellee Haught's home, the homebuilder, appellant G.C.I., Inc., and Haught entered into a settlement agreement by which G.C.I., Inc. agreed to make certain repairs. When G.C.I., Inc. failed to make the repairs, Haught filed suit, alleging breach of the settlement agreement. After a bench trial, the district court found that G.C.I., Inc. had breached the settlement agreement by failing to make the repairs in a reasonable time and awarded Haught damages. We affirm.

### ISSUES

G.C.I., Inc. presents three issues for our review:

I. Because no time was fixed for performance within the agreement, was Haught required, as a matter of law, to make a

* Retired June 2, 2000.

demand upon GCI before a default or breach could occur?

II. Was the amount of damages awarded by the court, in excess of and contrary to the specific amount expressed by the parties' intent within the agreement?

III. Did Haught excuse any non-performance by GCI by refusing to allow it to perform, when offered?

Appellee, Janet Haught, rephrases the issues:

1. Is the conclusion of the District Court that the Defendant/Appellant (G.C.I., Inc.) breached its contract with Janet Haught supported by substantial evidence such that it is not clearly erroneous?

2. Is the conclusion of the District Court regarding the damages suffered by Janet Haught supported by substantial evidence such that it is not clearly erroneous?

## FACTS

In early 1995, Janet Haught (Haught) and her husband Dwight hired appellant G.C.I., Inc. to build their "dream home" north of Cheyenne. The home was completed in mid-June of 1995. When the Haughts moved into their new home in late June and early July, they discovered a number of problems. Most obvious of the problems was a chimney that swayed in the wind. A "spongy" floor, i.e., one that bowed when walked on, was also a problem.

G.C.I., Inc. sued Haught in April of 1996 to recover monies due for the construction of the home. Haught counterclaimed, alleging that the workmanship was unsatisfactory. Court-ordered mediation was held in April of 1997, and a settlement agreement was filed in June of 1997. Under the terms of the settlement agreement, Haught agreed to pay $9800 into an escrow account, which she did immediately. When G.C.I., Inc. completed repairs, at its own expense, it would then be entitled to the $9800 held in escrow.

Pursuant to the terms of the settlement agreement, there were two categories of repairs: those the parties agreed on and those contingent on an engineer's report. As to this second category, the parties agreed to retain an engineer to determine if certain repairs were necessary and also to determine the manner in which certain repairs would be performed. The engineer completed his report on December 10, 1997, and both parties were given a copy of the report.

G.C.I., Inc. never performed any of the repairs, and Haught filed the present action on June 2, 1998, alleging breach of the settlement agreement. Trial was bifurcated into a liability phase and a damages phase. The liability phase was tried to the bench on January 29, 1999, whereafter the district court determined G.C.I., Inc. breached the settlement agreement. The damages phase was held May 25, 1999, where the district court determined that G.C.I., Inc. was liable to Haught for damages of $76,163.36. The district court allowed G.C.I., Inc. to offset the $9800 escrow amount, thus leaving it liable to Haught for $66,363.36. G.C.I., Inc. appealed.

## STANDARD OF REVIEW

In this case, we are asked to review both the district court's findings of fact as well as its conclusions of law.

The factual findings of a judge are not entitled to the limited review afforded a jury verdict. *Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 538 (Wyo.1993). While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. *Id.* Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail weighing disputed evidence. *Id.* Findings of fact will not be set aside unless the findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*

*Stroup v. Oedekoven,* 995 P.2d 125, 128 (Wyo. 1999) (quoting *Springer v. Blue Cross and Blue Shield of Wyoming,* 944 P.2d 1173, 1175–76 (Wyo.1997)). A district court's conclusions of law are reviewed *de novo. Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 538 (Wyo.1993).

This dispute arises over a settlement agreement. We have previously stated that a settlement agreement is a contract subject to the same legal principles as those which apply to any contract. *Exxon Corp. v. Board of County Comm'rs, Sublette County*, 987 P.2d 158, 165 (Wyo.1999); *Aztec Gas & Oil Corp. v. Roemer Oil Co.*, 948 P.2d 902, 903 (Wyo.1997); *Matter of Estate of McCormick*, 926 P.2d 360, 362 (Wyo.1996); *Wyoming Bd. of Certified Public Accountants v. Christensen*, 800 P.2d 853, 856 (Wyo.1990).

## DISCUSSION

### Breach

G.C.I., Inc. argues it did not breach the settlement agreement because Haught never demanded the repairs be performed by a certain time. It argues that, where no time for performance is fixed in a contract, demand is necessary before a party may be held in default. Haught responds that, where there is no time specified for performance, an unreasonable delay constitutes a breach and a formalistic demand is not required.

■ We first examine the issue of reasonable time. Where, as here, no time for performance is specified in a contract, the law implies performance must be within a reasonable time, and what is a reasonable time depends upon the circumstances of each case. *Bennett v. Foust*, 996 P.2d 693, 697 (Wyo.2000); *Matney v. Webster*, 808 P.2d 212, 214 (Wyo.1991); *Zitterkopf v. Roussalis*, 546 P.2d 436, 439 (Wyo.1976); *Black & Yates v. Negros–Philippine Lumber Co.*, 32 Wyo. 248, 258, 231 P. 398, 401 (Wyo.1924). An unreasonable delay in performance constitutes a breach and justifies the remedy of cancellation. *Zitterkopf v. Roussalis*, 546 P.2d at 439; *Keller v. Hummel*, 334 N.W.2d 200, 203 (N.D.1983). What constitutes a reasonable time in any particular case is a question of fact. *Matney v. Webster*, 808 P.2d at 214.

■ After reviewing the evidence, we conclude that the district court's finding that G.C.I., Inc.'s delay was unreasonable is not clearly erroneous. The settlement agreement was filed in June of 1997, and G.C.I.,

Inc. had not made the repairs prior to Haught filing suit in June of 1998. Haught's home was ostensibly completed in June of 1995, yet three years later the repairs to complete the home had not been made. Although G.C.I., Inc.'s owner testified that he was in the process of lining up subcontractors to perform the work, the district court did not find this evidence persuasive. In making its findings from the bench, the district court stated:

> There seems to be a posture taken here that, you know, I had this squeaking wheel, and I greased it by entering into this [settlement] agreement and I don't have to grease it again until it squeaks again. There just comes a point where the situation has to take on some urgency and be done promptly in order to be done within a reasonable period of time.

The district court found the delay was unreasonable, going so far as to say it was not even a close case. G.C.I., Inc. provides us with no persuasive reason to disturb this finding. *Zitterkopf v. Roussalis*, 546 P.2d at 439.

■ We shift our focus to the issue of demand. Although the settlement agreement did not require a demand for performance, G.C.I., Inc. argues a demand is required when a contract does not specify a time for performance. The general rule is that a demand is not a prerequisite to performance of a contractual obligation unless demand is required by the terms of the contract or the peculiar nature thereof. *Ramesbotham v. Farmers Elevator Co. of Jefferson*, 428 N.W.2d 542, 544 (S.D.1988); *Albee v. Maverick Media, Inc.*, 239 Neb. 60, 474 N.W.2d 238, 243 (1991); 17A Am.Jur.2d *Contracts* § 610 (1991); 17B C.J.S. *Contracts* § 546 (1999). Accordingly, where an agreement is absolute and unconditional, the general rule is that no demand for performance is necessary before action may be brought.

■ The authorities are split, however, on whether a demand is required when, as here, the contract fails to fix a time for performance. *McCall v. Atchley*, 256 Mo. 39, 164 S.W. 593, 596 (1914); *Seybold v. Magnolia Land Co.*, 376 So.2d 1083, 1086 (Ala.1979);

*Drake v. Martin,* 30 Cal.App.4th 984, 36 Cal. Rptr.2d 704, 713 (1994) (demand "usually necessary"); 17B C.J.S. *Contracts* § 546. While some courts are hesitant to imply a demand requirement when the parties have failed to include one in their contract, other courts imply a demand requirement to allow the defaulting party to avoid defective performance and to promote the informal settlement of disputes. *McClain v. Kimbrough Const. Co., Inc.,* 806 S.W.2d 194, 198 (Tenn. App.1990). We further note that there are instances in which courts will imply an obligation to give notice as a matter of common equity and fairness. *McClain v. Kimbrough Const. Co., Inc.,* 806 S.W.2d at 198 ("Under the facts of this case, we find that Kimbrough had a duty to give McClain notice and a reasonable opportunity to correct its defective work before terminating the contract."). Under these circumstances, rather than making a rigid rule that a demand is or is not required, we are inclined to adopt the more flexible approach utilized by the Tennessee court. Thus, we will look at the facts and circumstances in this case to determine whether, in common equity and fairness, Haught should have been required to make a demand for performance before filing suit.

The district court found no reason to require that a demand be made. The court stated:

> I recognize the law [G.C.I., Inc.] states is the requirement of a demand, but I think that rule has to be viewed in the context of the given situation. This agreement was entered into in settlement of a prior lawsuit. And I mean, how much does a customer have to demand before they are entitled to have somebody to just do it. That's what the Haughts were waiting for, somebody to do it, and nobody was doing it.

We agree and find no reason under these circumstances to require that a demand be made before Haught filed suit. In addition, although G.C.I., Inc.'s performance was conditioned in part on the engineer's report, there is no dispute that G.C.I., Inc. received a copy of that report and was thus well aware the condition had been satisfied. Moreover, we see nothing so peculiar about the contract such that a demand should be required. If anything, the peculiar nature of the settlement agreement may have created a situation where time was of the essence. We agree with the district court that no demand for performance was required.

■ G.C.I., Inc. also argues that Haught excused non-performance on its part by refusing to allow it to perform, when offered. However, the offer upon which G.C.I., Inc. relies was not made until after Haught filed suit in June of 1998. By this time, as the district court concluded, G.C.I., Inc. had already breached the contract by failing to make the repairs in a reasonable time. Thus, Haught had no obligation to accept G.C.I., Inc.'s offer to perform which, at the point it was made, amounted to another offer for settlement. *See Western Alfalfa Milling Co. v. Worthington,* 31 Wyo. 82, 88–89, 223 P. 218, 220 (Wyo.1924).

### Damages

In attacking the district court's ruling on damages, G.C.I., Inc. argues the $9800 Haught paid into escrow as part of the settlement agreement was intended as liquidated damages in the event G.C.I., Inc. did not perform under the terms of the settlement agreement. We disagree.

■ A provision for liquidated damages is generally defined as follows:

> " 'Generally speaking, it may be said that when the damages arising from the breach of the contract which the obligation is given to secure are uncertain in their nature and not readily susceptible of proof by the ordinary rules of evidence, and are not so disproportionate to the probable damages suffered as to appear unconscionable, and it is reasonably clear from the whole agreement that it is the intention of the parties to provide for liquidated damages and not a penalty, such a stipulation will be held to be one for liquidated damages.' "

In *Ray v. Electrical Products Consolidated,* Wyo., 390 P.2d 607, 608 (1964), we adopted that said in Restatement, Contracts, § 339, p. 552 (1932):

> " '(1) An agreement, made in advance of breach, fixing the damages therefor, is

not enforceable as a contract and does not affect the damages recoverable for the breach, unless

> " '(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and
>
> " '(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.' "

*Walker v. Graham,* 706 P.2d 278, 281 (Wyo. 1985) (selected citations omitted); *see also Jessen v. Jessen,* 810 P.2d 987, 990 (Wyo. 1991). While normally the question in a liquidated damages case is whether the provision in question amounts to an impermissible penalty, this case presents the question of whether the provision in question was intended to be a liquidated damages provision. In other words, is the provision in question "[a]n agreement, made in advance of breach, fixing the damages therefor?"

It is clear the $9800 placed in escrow was the amount G.C.I., Inc. would receive if it performed under the terms of the settlement agreement. Nowhere does the settlement agreement indicate that the $9800 figure was intended to serve as Haught's damages in the event G.C.I., Inc. breached the settlement agreement. Thus, we agree with Haught that the escrow provision was not intended to fix the damages for breach and is thus not a provision for liquidated damages.

Having concluded that the $9800 was not intended to serve as liquidated damages, we turn to the amount of damages awarded. Generally,

> [t]he damages awarded in an action for breach of contract are designed to put the plaintiff in the same position as if the contract had been performed, less proper deductions. *Robert W. Anderson Housewrecking and Excavating, Inc. v. Board of Trustees, Sch. Dist. No. 25,* 681 P.2d 1326, 1333 (Wyo.1984). This measure of damages includes recovery for incidental or consequential loss caused by the breach. *General Insur. Co. of America v. City of Colorado Springs,* 638 P.2d 752, 759 (Colo. 1981). In *Reposa v. Buhler,* 770 P.2d 235, 237–38 (Wyo.1989), we recognized the measure of damages for breach of contract set

out in Restatement, Second, Contracts § 347 (1981):

> Subject to the limitations stated in §§ 350–53, the injured party has a right to damages based on his expectation interest as measured by
>
> (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus
>
> (b) any other loss, including incidental or consequential loss, caused by the breach, less
>
> (c) any cost or other loss that he has avoided by not having to perform.

*JBC of Wyoming Corp. v. City of Cheyenne,* 843 P.2d 1190, 1195 (Wyo.1992).

■ In the record on appeal, there is no transcript from the damages phase of the trial. It is the appellant's burden to bring us a complete record on which to base a decision. *Ahearn v. Ahearn,* 993 P.2d 942, 949 (Wyo.1999); *Stadtfeld v. Stadtfeld,* 920 P.2d 662, 663 (Wyo.1996). When no transcript has been made of trial proceedings, this court accepts the trial court's findings as being the only basis for deciding the issues which pertain to the evidence. *Willowbrook Ranch, Inc. v. Nugget Exploration, Inc.,* 896 P.2d 769, 771 (Wyo.1995); *Armstrong v. Pickett,* 865 P.2d 49, 50 (Wyo.1993). In the absence of anything to refute them, we will sustain the trial court's findings, and we assume that the evidence presented was sufficient to support those findings. *Willowbrook Ranch, Inc. v. Nugget Exploration, Inc.,* 896 P.2d at 771; *Osborn v. Pine Mountain Ranch,* 766 P.2d 1165, 1167 (Wyo.1989). Here, because there is nothing in the record to refute the district court's finding on damages, we affirm the award of damages.

Affirmed.