**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 14-1098**

_____

ROBERT DONNERT; DAVID DONNERT,

        Plaintiffs - Appellees,

    and

TIFFANY HARTMANN,

        Plaintiff,

        v.

FELD ENTERTAINMENT, INC., d/b/a Ringling Bros. and Barnum & Bailey Circus,

        Defendant - Appellant.

_____

**No. 14-1147**

_____

ROBERT DONNERT; DAVID DONNERT,

        Plaintiffs - Appellants,

    and

TIFFANY HARTMANN,

        Plaintiff,

        v.

FELD ENTERTAINMENT, INC., d/b/a Ringling Bros. and Barnum & Bailey Circus,

        Defendant - Appellee.

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis, III, Senior District Judge. (1:13-cv-00040-TSE-TRJ)

Argued: March 24, 2015          Decided: May 18, 2015

Before TRAXLER, Chief Judge, and WILKINSON and NIEMEYER, Circuit Judges.

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Traxler and Judge Wilkinson joined.

**ARGUED:** William Boyle Porter, BLANKINGSHIP & KEITH, PC, Fairfax, Virginia, for Appellant/Cross-Appellee. Robert Wayne Pierce, THE PIERCE LAW FIRM, LLC, Annapolis, Maryland, for Appellees/Cross-Appellants. **ON BRIEF:** Laurie Proctor, BLANKINGSHIP & KEITH, PC, Fairfax, Virginia, for Appellant/Cross-Appellee.

Unpublished opinions are not binding precedent in this circuit.

NIEMEYER, Circuit Judge:

David and Robert Donnert, circus performers, horse trainers, and brothers, commenced this breach-of-contract action against Feld Entertainment, Inc., which operates the Ringling Bros. and Barnum & Bailey Circus. They alleged that Feld Entertainment wrongfully terminated two contracts -- an April 21, 2010 Circus Acts Employment Contract (the "Employment Contract") and an April 21, 2010 Lease of four horses and related equipment for use in the Donnerts' circus acts (the "Lease") -- and that it violated the Florida Whistle-Blower's Act of 1986, Fla. Stat. § 448.102(3), by retaliating against them for complaining about circus safety and refusing to participate in a dangerous show.

Before trial, the district court dismissed the Donnerts' claim under the Whistle-Blower's Act but permitted the contract claims to go to trial. A jury returned a verdict in favor of the Donnerts in the amount of $114,400.

Both parties appealed the judgment. On appeal, Feld Entertainment challenges two jury instructions given by the district court and the court's denial of its post-trial motions. The Donnerts challenge the dismissal of their Whistle-Blower's Act claim and the exclusion of evidence of their out-of-pocket expenses in proving damages. Because we find no reversible error, we affirm.

3

In the Employment Contract, the Donnerts agreed to perform, for a fixed duration, a "horse riding act with juggling & acrobatics" and a "comedy horse riding act," subject to Feld Entertainment's supervision, direction, and control. In the Lease, the Donnerts leased to Feld Entertainment four trained horses and related equipment for use in their circus acts.

In Paragraph 7(c) of the Lease, which formed the basis of the dispute in this case, the Donnerts "acknowledge[d] that safety [was] of paramount concern to [Feld Entertainment] as it relate[d] to animals, the public, and [Feld Entertainment's] animal care and other staff," and they promised to "take all necessary steps to ensure such level of safety." Also, Feld Entertainment agreed to "work with [the Donnerts] to facilitate compliance" with those safety obligations.

The contracts provided for a brief probationary period, after which Feld Entertainment could terminate the contracts only if the Donnerts "fail[ed] to perform in a first class, professional manner, [or] disrupt[ed] or impede[d] [Feld Entertainment's] creative and production value and direction of the Production in any way either through action or failure to comply with [Feld Entertainment's] instructions."

After the Donnerts began training and rehearsing with the circus, Feld Entertainment modified the order of performances so

4

that the Donnerts' comedy act would immediately follow a tiger act.  The Donnerts feared that the tigers' strong smell and the substantial noise associated with dismantling the tiger cage would cause their horse, Cornbread, to become scared and run off, potentially injuring himself, a performer, or a patron.  They believed that their concerns were vindicated when Cornbread began having difficulties performing the comedy act and when the horse stepped on David Donnert's leg during a rehearsal.  In January 2011, Robert Donnert sent Feld Entertainment an email informing it that "[w]ith the show order the way it is now it is not safe for my comedy horses."  The parties discussed the safety issue, and, after they failed to reach a mutually agreeable solution, Feld Entertainment terminated the contracts by a letter dated January 9, 2011.  The letter invoked Feld Entertainment's unfettered right to terminate the contracts during the probationary period.  The probationary period, however, had already expired.  Recognizing that fact, Feld Entertainment later insisted that it had cause to terminate the contracts in any event because of the Donnerts' refusal to perform their acts in the order directed.

The Donnerts commenced this action again Feld Entertainment for breach of contract and violation of the Florida Whistle-Blower's Act.  The district court dismissed the Whistle-Blower's Act claim pursuant to the Employment Contract's choice-of-law

5

provision, which specified that Virginia law would govern the employment relationship. Following a three-day trial, a jury awarded the Donnerts $114,400 on their breach-of-contract claims. In denying Feld Entertainment's post-trial motion for judgment as a matter of law or for a new trial, the district court concluded that there was a legally sufficient evidentiary basis for the jury to find that "the show's new order presented safety issues"; that Feld Entertainment "did not attempt in good faith to work with plaintiffs to resolve [those] safety issue[s]"; and consequently that Feld Entertainment breached Paragraph 7(c) of the Lease. The court also rejected Feld Entertainment's claims of prejudice based on repeated remarks at trial by the Donnerts and their counsel regarding excluded evidence.

From the final judgment entered on the verdict, Feld Entertainment appealed, and the Donnerts cross-appealed.

II

Feld Entertainment maintains initially that the district court erred in instructing the jury on the implied duty of good faith and on the wrongful prevention of performance. The court gave the following instructions on those subjects:

> Both parties to a contract have a duty of good faith and fair dealing to act as they promised. Such a duty of good faith and fair dealing is implied in every contract. Each contracting party is entitled to

6

assume that the other party intends to perform the contract in good faith. But the duty of good faith and fair dealing does not add any duties to the contract not already contained within the terms of the contract, nor does it change or subtract any duties from the contract. It is simply a duty to act in good faith according to the terms of the contract.

\* \* \*

A party to a contract who prevents the other party from performing his obligations under a contract has breached the contract. But a party does not breach the contract if the party exercises a right it has under the contract.

It is beyond argument that the court's instructions accurately stated the law in Virginia. See Keiler v. Valley Proteins, Inc., No. 88858, 1989 WL 646549, at \*2 (Va. Cir. Ct. June 15, 1989) (holding that a duty of good faith is implied in employment contracts of definite duration); Ward's Equip., Inc. v. New Holland N. Am., Inc., 493 S.E.2d 516, 520 (Va. 1997) (holding that the implied duty of good faith "cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist"); Whitt v. Godwin, 139 S.E.2d 841, 844 (Va. 1965) (holding that a contracting party who wrongfully prevents another party's performance has breached the contract). Nonetheless, Feld Entertainment argues that the instructions should not have been given at all because the legal principles have no application to the facts of this case. We do not agree.

7

At trial, the Donnerts argued that by reordering the show in a manner that was unsafe, Feld Entertainment induced them either to breach their duty to perform the comedy act as directed by Feld Entertainment or to breach their duty under Paragraph 7(c) of the Lease to "take all necessary steps" to ensure that their acts were safe. They argued that Feld Entertainment's conduct in reorganizing the show was wrongful because its exclusive right to control the sequence of the show was restricted by Paragraph 7(c), which obligated Feld Entertainment to work with the Donnerts to facilitate compliance with their safety obligations, as well as by Feld Entertainment's freestanding duty, implicit in the Employment Contract, to work with the Donnerts in good faith to ensure a safe performance. Although Feld Entertainment takes issue with the Donnerts' interpretation of Paragraph 7(c), their interpretation is at least plausible, entitling them to have the meaning of the provision submitted to the jury for resolution. See Foreign Mission Bd. of the S. Baptist Convention v. Wade, 409 S.E.2d 144, 146 (Va. 1991). And because the challenged jury instructions were directly relevant to the Donnerts' viable theories of liability, the district court did not abuse its discretion in giving them.

Feld Entertainment next contends that the district court should have granted its renewed post-trial motion for judgment

8

as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) because the evidence demonstrated that it had cause to terminate the Donnerts for refusing to perform as directed.[*] Viewing the evidence in the light most favorable to the Donnerts, however, there was a legally sufficient evidentiary basis for the jury to conclude (1) that Feld Entertainment breached Paragraph 7(c) and/or the implied duty of good faith by reordering the show in a manner that was unsafe and subsequently failing to address the Donnerts' safety concerns, and (2) that, through its breach, it made it impossible for the Donnerts to meet all of their contractual obligations.

Feld Entertainment also argues that it should have been entitled to judgment as a matter of law because the Donnerts failed to present sufficient evidence of their damages. In presenting evidence of damages, the Donnerts proved the maximum weekly pay to which they were entitled under the Employment Contract and the Lease, the number of weeks remaining in the agreements at the time they were terminated, and the amount of income that they secured by other employment, thus mitigating damages. In finding damages, the jury apparently multiplied the

_____

[*] Feld Entertainment also challenges the denial of its motion for summary judgment on similar grounds. However, that denial is not appealable after trial. Bunn v. Oldendorff Carriers GmbH & Co. KG, 723 F.3d 454, 460 n.3 (4th Cir. 2013).

9

maximum weekly pay by the number of weeks remaining and subtracted the Donnerts' other income. Noting that the weekly pay to which the Donnerts were entitled varied according to the number of performances scheduled in a given week and the percentage of those performances in which the Donnerts participated, Feld Entertainment maintains that this method of calculating damages was insufficient because the Donnerts presented no evidence at trial as to how many of the weeks remaining were full performance weeks. But in a breach-of-contract claim, a plaintiff need not prove damages with exact precision; reasonable certainty is sufficient. See, e.g., Isle of Wight Cnty. v. Nogiec, 704 S.E.2d 83, 85-86 (Va. 2011); Agostini v. Consolvo, 153 S.E. 676, 680 (Va. 1930). The Donnerts' method of proving damages resulted in a reasonable estimate of what they would have been paid but for their termination. Therefore, the district court properly denied the Donnerts' renewed motion for judgment as a matter of law.

Finally, Feld Entertainment argues that the jury's verdict should have been vacated and a new trial granted under Federal Rule of Civil Procedure 59(a) because the Donnerts and their counsel made repeated references at trial to two pieces of evidence that the district court had excluded -- namely, irrelevant evidence that another one of the Donnerts' horses had slipped and suffered injuries while performing a different act

10

with a different Ringling Bros. circus unit, and inadmissible hearsay evidence of a veterinarian's discharge report pertaining to injuries suffered by Cornbread.  In denying the motion, the district court found that the statements did not constitute a clear miscarriage of justice sufficient to warrant a new trial because "on those occasions that defendant objected to these remarks, the objection was sustained and plaintiffs' statements were stricken."  Because the trial judge was in the best position to assess the prejudice caused by the Donnerts' remarks, we cannot conclude that the district court abused its discretion in denying Feld Entertainment's motion.  See Konkel v. Bob Evans Farms Inc., 165 F.3d 275, 280 (4th Cir. 1999) (holding that a trial judge is entitled to "the benefit of every doubt" on review of the denial of a Rule 59(a) motion (quoting Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 438-39 (1996))); Poynter ex rel. Poynter v. Ratcliff, 874 F.2d 219, 223 (4th Cir. 1989) (stating that the denial of a Rule 59(a) motion "is not reviewable save in the most exceptional circumstances").

## III

With respect to their cross-appeal, the Donnerts contend that the district court erred in relying on the Employment Contract's choice-of-law provision -- which states that "all claims and disputes relating" to "the employment relationship"

11

are to be "governed by the laws of the Commonwealth of Virginia" -- to dismiss their claim under the Florida Whistle-Blower's Act. They argue that because the provision does not expressly exclude Virginia's choice-of-law rules, those rules are incorporated into the Employment Contract. And under Virginia's choice-of-law rules, which call for the application of the law of the lex loci delicti ("the place of the wrong") to tort claims, see Jones v. R.S. Jones & Assocs., Inc., 431 S.E.2d 33, 34 (Va. 1993), the Donnerts argue that Florida law should govern their retaliatory-discharge claim, given that the Donnerts' contracts were terminated in Florida.

"In the absence of a contrary indication of intention," however, "the reference [in a choice-of-law provision] is to the local law of the state of the chosen law," which excludes a state's choice-of-law rules. Restatement (Second) of Conflict of Laws §§ 4, 187(3); see also, e.g., Chan v. Soc'y Expeditions, Inc., 123 F.3d 1287, 1297 (9th Cir. 1997). Because the Employment Contract's choice-of-law provision calls for application of Virginia local law to "all claims and disputes relating" to "the employment relationship," Virginia law applies to the Donnerts' retaliatory-discharge claim. Cf. Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 628 (4th Cir. 1999) (holding under Virginia choice-of-law principles that Virginia law governed the plaintiff's tort claim, where the

12

employment contract specified that Virginia substantive law governed interpretation of the contract and all "rights and obligations of the parties").

The Donnerts argue alternatively, relying on section 187(2)(b) of the Restatement (Second) of Conflict of Laws, that applying Virginia substantive law would offend a fundamental public policy of Florida by effectuating a waiver of their statutory right to sue their former employer for unlawful retaliation and consequently that Florida law should apply. Conceding that Virginia law also prohibits an employer from "discharg[ing] . . . an employee because the employee has filed a safety or health complaint," Va. Code Ann. § 40.1-51.2:1, the Donnerts argue nonetheless that § 40.1-51.2:1 does not protect them because they were terminated in Florida and, as they argue, that provision does not apply extraterritorially. Virginia's Administrative Code, however, expressly provides that "[a]ll Virginia statutes, standards, and regulations pertaining to occupational safety and health shall apply to every employer, employee and place of employment in the Commonwealth of Virginia," with several exceptions not applicable here. 16 Va. Admin. Code 25-60-20. Feld Entertainment is undoubtedly an "employer . . . in the Commonwealth of Virginia." Indeed, the Employment Contract states that there is no other jurisdiction in which Feld Entertainment maintains significant permanent

13

contacts. Therefore, Va. Code Ann. § 40.1-51.2:1 would have applied to Feld Entertainment's allegedly retaliatory personnel action. And while the Donnerts note that Virginia law is less protective of whistleblowers than Florida law, "[t]he forum will not refrain from applying the chosen law merely because this would lead to a different result." See Restatement (Second) of Conflict of Laws § 187(2) cmt. g. The district court did not err in dismissing the Donnerts' Florida Whistle-Blower's Act claim pursuant to the Employment Contract's Virginia choice-of-law provision.

The Donnerts also contend on appeal that the district court erred in preventing them, as a discovery sanction, from proving $121,860 of out-of-pocket damages. During the discovery phase of the litigation, in response to an interrogatory asking them to itemize the nature and amount of each of their claims for damages and to produce documents evincing those damages, the Donnerts identified 14 categories of out-of-pocket damages that they intended to prove at trial apart from the loss of future pay under the Employment Contract and the Lease. When, however, the Donnerts failed to produce documents evincing that they had actually incurred these damages, Feld Entertainment filed a motion to compel their production. At a hearing on the motion on May 23, 2013, the magistrate judge warned the Donnerts' counsel as follows:

14

> [The documents] are overdue. It's your clients' lawsuit. . . . [T]here comes a time at which documents have to be produced or else you can't rely on them. So I am going to set that time at 5:00 o'clock [on May 28], and your clients are not going to be able to claim damages for any out-of-pocket expenses for a veterinary bill or anything else that [Feld Entertainment's counsel doesn't] have in [her] hands by close of business [on May 28].

After the Donnerts failed to produce any documents relating to out-of-pocket expenses by May 28, Feld Entertainment filed a motion to strike all claims for out-of-pocket expenses as a sanction under Federal Rule of Civil Procedure 37(b)(2)(A). At a hearing, the magistrate judge noted that his May 23 ruling "[took] care of most, if not all," of the sanctions request. When, on the eve of trial, Feld Entertainment learned that the Donnerts planned to offer oral evidence of their out-of-pocket damages, it filed a motion in limine with the district court to exclude all testimony and documents relating to those damages. The district court granted the motion, finding that the magistrate judge's May 23 oral ruling prohibited the Donnerts from claiming at trial any damages for which documentation was not produced by May 28.

The Donnerts contend on appeal that the magistrate judge had merely ordered that they could not offer at trial documentary evidence of their out-of-pocket damages that they did not produce by May 28, and they argue that the district court erroneously converted this document-exclusion order into

15

an issue-preclusion order. We conclude, however, that the district court did not err in its characterization of the magistrate judge's order. The magistrate judge specifically warned the Donnerts that they would not "be able to claim damages for any out-of-pocket expenses for a veterinary bill or anything else that [Feld Entertainment's counsel did not] have in [her] hands by close of business [on May 28]." (Emphasis added). Moreover, it would have been unfair to permit the Donnerts to testify to their out-of-pocket expenses without providing any receipts or other documentation to substantiate their estimates. And the record reflects that the Donnerts were consistently dilatory in complying with their discovery obligations. Thus, we conclude that the district court did not abuse its discretion in granting Feld Entertainment's motion in limine.

*    *    *

For the reasons given, we affirm the judgment of the district court.

AFFIRMED